```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

MATTHEW R. BALGORD,                  :
                                     :
      Plaintiff,                     :
                                     :
vs.                                  :  CIVIL ACTION NO. 14-00431-KD-B
                                     :
PLEASURE ISLAND LAND CO., INC.,      :
et al.,                              :
                                     :
      Defendants.                    :
```

**REPORT AND RECOMMENDATION**

This case is before the Court on Plaintiff Matthew R. Balgord's Motion to Remand. (Doc. 14). The motion, which has been fully briefed and is ripe for resolution, has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c). Upon consideration of all matters presented, the undersigned **RECOMMENDS**, for the reasons stated herein, that Plaintiff's Motion to Remand (Doc. 14) be **GRANTED**, and that this action be **REMANDED** to the Circuit Court of Baldwin County, Alabama.

  **I.  Background Facts**

Plaintiff Matthew R. Balgord (hereinafter "Plaintiff" or "Balgord") commenced this action in the Circuit Court of Baldwin County, Alabama on August 12, 2014 against Defendants Pleasure Island Land Company, Inc., (hereinafter "PILC"), James E. Bridges, III, (hereinafter "Bridges") and PNC Bank, National

Association (hereinafter "PNC Bank"). (Doc. 1-1 at 1). In the complaint, Plaintiff alleges that he purchased two properties in Orange Beach, Alabama, namely 32571 River Road (hereinafter "River Road") and 32516 Sandpiper Drive (hereinafter "Sandpiper"), and that both properties were financed by mortgages secured from Gulf State Bank. According to Plaintiff, Gulf State Bank serviced the loans, and pursuant to the parties' agreement, Gulf State Bank made automatic draft deductions from Plaintiff's checking account held with the Bank. In 2008, RBC acquired First Gulf Bank, and continued to draft from Plaintiff's checking account the funds necessary to service the mortgage debt on the River Road and Sandpiper properties. (Id. at 3). Later, in 2012, PNC Bank acquired RBC, and Plaintiff was advised that if his loan payments were being drafted from his checking account, the payments "would migrate successfully." (Id.) According to Plaintiff, notwithstanding PNC Bank's representations, it failed to properly service his loans, and he suffered damages as a result.

Plaintiff further alleges that in 2007, he leased the Sandpiper property to Defendant Bridges, an attorney who was providing legal representation to him at the time. Bridges signed the Sandpiper lease as president of Pleasure Island Land Co. (Id. at 3). Later, the lease was modified into an agreement that provided for the purchase of the Sandpiper property by PILC

2

for $575,000. (Id. at 4-5).  Per the parties' agreement, PILC was responsible for making 15 monthly payments in the amount of $2,050, and a final balloon payment on February 1, 2011. (Id.) In addition to the modified lease agreement, Plaintiff and PILC also executed a vendor's lien deed. (Id. at 3). As before, Bridges signed the documents as president of Pleasure Island Land Co. (Id.)

In his complaint, Plaintiff alleges that he is a resident of Alabama, that Bridges is a resident of Alabama, that PILC is an Alabama corporation with its principal place of business in Alabama, and that PNC Bank is a District of Columbia corporation with its principal place of business in Pennsylvania. (Id. at 1).  In count one, Plaintiff asserts a breach of contract claim against PILC based on its failure to fulfill its obligations under the parties' modified lease agreement and vendor's lien deed.  (Id. at 4-5). In count two, Plaintiff asserts that Defendant Bridges is the alter ego of PILC such that personal liability should be imposed on him for the liabilities and obligations of PILC.  In count three, Plaintiff asserts a breach of fiduciary claim against Defendant Bridges and argues that Bridges represented Plaintiff in legal matters, including the Sandpiper lease transaction, and that Bridges failed to represent Plaintiff's best interests. (Id. at 6-7). In count four, Plaintiff contends that Bridges and PILC have been

unjustly enriched in that they have accepted and retained the benefit and value of the Sandpiper property while failing to pay the amounts due under the parties' agreement. (Id. at 7-8). In Court five, Plaintiff asserts a breach of contract claim again PNC Bank based on its failure to service his loans by properly drafting his checking account. (Id. at 8) In count six, Plaintiff alleges that PNC Bank acted negligently and wantonly in failing to properly service his loans. (Id. at 9). In count seven, Plaintiff alleges that PNC Bank has defamed him by falsely reporting to credit agencies that his mortgages are in default despite the fact that it is PNC Bank's failure to properly service the loans that caused the problems. (Id. at 10). In count eight, Plaintiff seeks a preliminary and permanent injunction prohibiting PNC Bank from foreclosing on the Sandpiper and River Road properties. (Id. at 11).

On September 15, 2014, Defendant PNC Bank filed a Notice of Removal. (Doc. 1). In the Notice, PNC Bank asserts that the citizenship of Defendants PILC and Bridges should be disregarded because they have been fraudulently joined. (Id. at 9). PNC Bank argues that there are no common facts or issues with respect to Plaintiff's claims against the Defendants, nor is there any joint or several liability among PNC Bank and the non-diverse Defendants. (Id. at 11). PNC Bank contends that given the lack of connection between the claims, the citizenship of

4

PILC and Bridges should be disregarded because they have been misjoined.[1]

Plaintiff filed the instant motion to remand on October 14, 2014. (Docs. 13, 14). In the motion, Plaintiff concedes that the amount in controversy in this case exceeds $75,000. (Doc. 13 at 7). However, Plaintiff argues that diversity jurisdiction is lacking because there is not complete diversity among the parties. According to Plaintiff, PNC Bank has failed to meet its burden of establishing that Bridges and PILC have been improperly joined in this action. (Id.) Plaintiff contends that the joinder of PNC Bank, PILC and Bridges into "a single action advances the express purposes of Rule 20 of the Alabama Rules of Civil Procedure [by] "promot[ing] trial convenience, prevent[ing] a multiplicity of suits, and expedit[ing] the final determination of litigation by inclusion in one suit of all parties directly interested in the controversy despite technical objections previously existing in many situations. Committee Comments to ALA. R.Civ.P.20." (Id. at 18-19). Plaintiff further asserts that PNC Bank has also failed to establish that the joinder of PILC and Bridges is "so egregious as to constitute fraudulent joinder." (Id.).

---

[1] PNC Bank also asserts that the amount in controversy has been met because Plaintiff is requesting injunctive relief in the form of an order preventing foreclosure on the Sandpiper and River Road properties which the Tax Accessor has valued at amounts significantly higher than $75,000. (Id. at 4-6).

In response, PNC Bank argues that the joinder of the non-diverse Defendants is fraudulent because Plaintiff's claims against the non-diverse Defendants do not arise from the same alleged transaction, occurrence or same set of operative facts as Plaintiff's claims against PNC Bank. (Doc. 23).

## II. Analysis

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction. See Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005) ("[I]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.") (citation omitted). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. See University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). "[T]here is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1050 (11th Cir. 2001).

This action was removed by PNC Bank pursuant to 28 U.S.C.

6

§§ 1441[2] and 1446[3] on the basis of diversity of citizenship under 28 U.S.C. § 1332. (Doc. 1)  Where the alleged basis for federal jurisdiction is diversity under § 1332, the removing defendant has the burden of demonstrating that there is (1) complete diversity of citizenship and (2) an amount-in-controversy greater than $75,000.  See 28 U.S.C. § 1332(a); see also University of South Alabama, 168 F.3d at 412 ("Where jurisdiction is predicated on diversity of citizenship, all plaintiffs must be diverse from all defendants.").[4]

---

[2] Title 28 U.S.C. § 1441(a) provides, in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

[3] Title 28 U.S.C. § 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

[4] The parties do not dispute that the amount in controversy requirement has been met, nor do they dispute the timeliness of

As noted supra, Plaintiff alleges that removal is improper because the Court lacks complete diversity. The parties agree that Defendant PNC Bank is a citizen of Delaware for purposes of determining diversity jurisdiction and that Plaintiff, as well as Defendants PILC and Bridges, are all citizens of the State of Alabama, a fact that, on its face, destroys diversity. However, as noted, PNC Bank contends that the non-diverse Defendants have been fraudulently joined in an effort to defeat complete diversity; thus, the citizenship of non-diverse Defendants PILC and Bridges cannot be considered for purposes of determining diversity jurisdiction.

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). The proceeding appropriate "for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 n.9 (5th Cir. 1981)). In such a proceeding, the district court must "resolve all

---

Defendants' removal.  The dispute in this case centers solely on the diversity requirement.

questions of fact . . . in favor of the plaintiff." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Additionally, any uncertainties about substantive state law must be resolved in favor of the plaintiff. Crowe, 113 F.3d at 1538.

Under Eleventh Circuit precedent, joinder is fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several, or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998); accord Loop v. Allianz Life Ins. Co. of North America, 2009 U.S. Dist. LEXIS 31322, *10, 2009 WL 981988, *4 (S.D. Ala. 2009).

The burden of proving fraudulent joinder rests with the removing party. See Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). In evaluating whether there has been fraudulent joinder, all allegations and submissions must be viewed in the light most favorable to the plaintiff, and "the district court should resolve all questions of fact and controlling law in favor of the plaintiff . . . ." See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir.1989); Crowe, 113 F.3d at

9

1538.  Further, as observed by the Eleventh Circuit in <u>Tapscott v. MS Dealer Service Corp.</u>, 77 F. 3d 1353, 1360 (11th Cir. 1996), <u>abrogated on other grounds by Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069 (11th Cir. 2000), mere misjoinder is not enough to establish fraudulent joinder. Only in egregious circumstances does misjoinder constitute fraudulent joinder. <u>See</u> <u>Tapscott</u>, 77 F. 3d at 1360 (rejected assertion that a misjoinder, no matter how egregious, is not fraudulent joinder).

In <u>Tapscott</u>, the plaintiff filed a class action in state court against an "automobile" class of defendants regarding the sale and financing of automobile service contracts. The plaintiff later amended his complaint to add a claim against a "merchant" class of defendants involved in the sale of retail extended service contracts. <u>Id.</u> at 1354. At the trial level, the plaintiff argued that the claims could be joined because both classes engaged in similar business practices.  The trial court rejected the argument, and on appeal, the Eleventh Circuit held that the misjoinder of two separate classes — an "automobile" class and a "merchant" class constituted a fraudulent joinder because defendants in the "automobile" class had "no real connection with the controversy" involving the "merchant" class and the only similarity between the class allegations were that both classes violated a particular provision of the Alabama Code.  Under those circumstances, the

10

Court found that the attempt to join the classes was "so egregious" as to constitute a fraudulent joinder. Id. at 1360.

Although the Tapscott Court did not define what constitutes egregious misjoinder, it would appear that a finding of egregiousness "depend[s] upon the extent to which the resident, non-diverse defendant has 'any real connection with the controversy' involving the diverse defendant." Luke v. O'Hearn, 2014 U.S. Dist. LEXIS 36495, *6 (M.D. Ga. March 20, 2014)(citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 66 L. Ed. 144 (1921)); see also Triggs, 154 F.3d at 1288-90 (although plaintiff asserted claims against two different classes, court held that the plaintiff's allegations arose out of a series of transactions, which would give rise to common questions of law and fact; thus, there was no fraudulent joinder).

In this case, PNC Bank argues that Plaintiff's claims against PNC Bank and his claims against non-diverse Defendants PILC and Bridges are totally unrelated and share no common facts or issues. (Docs. 1, 23). Specifically, PNC Bank points to the fact that it is not referenced in any of the claims that Plaintiff has asserted against Defendants PILC and Bridges, and likewise, PILC and Bridges are not referenced in any of the claims asserted against PNC Bank. (Doc. 23 at 5). PNC Bank also argues that the claims against it involve the servicing of

11

Plaintiff's mortgage loans, including the Sandpiper and the River Road properties, whereas Plaintiff's claims against PILC and Bridges relate to their lease agreement, modified lease agreement and vendor's lien deed for the Sandpiper property. PNC Bank asserts that it is not a party to Plaintiff's lease agreement, modified lease agreement, or vendor's lien deed for the Sandpiper property, and as a result, there is no joint or several liability between PNC Bank and the non-diverse Defendants, nor is there any basis for finding the existence of a logical relationship between Plaintiff's claim against PNC Bank and the non-diverse Defendants. (Id.)

Additionally, PNC Bank notes that the default by non-diverse Defendants PILC and Bridges is alleged to have occurred in February 2011, whereas the breach by PNC Bank is alleged to have occurred more than a year later in March 2012. According to PNC Bank, "Plaintiff's long delay in taking action against the other Defendants shows that Plaintiff has joined the other Defendants in hopes of using claims with no logical relationship to his claims against PNC [Bank] to prevent this Court from exercising jurisdiction.[5] (Id. at 7-8)

Plaintiff in turn argues that PNC Bank has failed to show, by clear and convincing evidence that PILC and Bridges were

---

[5] PNC Bank also argues that Plaintiff's claims against the nondiverse Defendants should be severed pursuant to Fed.R.Civ.P. 21.

fraudulently joined under Rule 20, and has further failed to show that their joinder was egregious so as to constitute fraudulent joinder. (Doc. 31). According to Plaintiff, his claims against PNC Bank and the non-diverse Defendants are logically related because "[t]he conduct of and threatened foreclosure by the removing diverse defendant (PNC Bank) coupled with the activity of and default by the non-diverse defendants (PILC and Bridges) has interfered with Plaintiff's interest in the Sandpiper Drive property and contributed to Plaintiff's damages. (Id. at 12).

Plaintiff asserts that if PILC had made the payments required under the vendor's lien deed, he could have satisfied PNC Bank's mortgage on the Sandpiper property, and that the Bank's mismanagement of his accounts also caused the Sandpiper property, which is occupied by Bridges and PILC, to go into default. (Id.). Plaintiff maintains that PNC Bank's conduct resulted in PILC and Bridges filing a counterclaim against Plaintiff for breach of contract; thus, even if PNC Bank had not been an original party to the action against PILC and Bridges, the counterclaim by the non-diverse Defendants would have compelled the joinder of PNC Bank as a party because the Bank's threatened foreclosure would inevitably extinguish Plaintiff's vendor's lien deed on the Sandpiper property.  (Id. at 6-7). Plaintiff further asserts that PNC Bank has failed to present

13

evidence that the joinder was egregious.

The Court begins its analysis by determining whether the non-diverse Defendants could have been permissively joined in this action against PNC Bank.  "If permissive joinder is appropriate, then there obviously can be no fraudulent joinder; but as noted, a finding of improper joinder is not dispositive of fraudulent joinder.  Instead, if permissive joinder is not appropriate, the Court must look closer to determine whether there is such a lack of connection between the claims that not only is joinder improper, but it is clearly or obviously so. Luke v. O'Hearn,  2014 U.S. Dist. LEXIS 36495.

Rule 20 of the Federal Rules of Civil procedure provide that persons may be joined as defendants in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a)(2); see also Rule 20, Ala.R.Civ.P. (using near identical language in Alabama's permissive joinder rule). [6]

---

[6] Rule 20, Ala.R.Civ.P. provides, in pertinent part:

> All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising

14

Based upon the record before the Court, the undersigned finds that PNC Bank is correct to the extent it argues that Plaintiff's claims in this action against PNC Bank are based on mortgage loans secured by the PNC Bank and serviced by the PNC Bank whereas, his claims against non-diverse Defendants PILC and Bridges are based on wholly separate and distinct contracts, namely the Sandpiper lease, modified lease agreement, and the vendor's lien deed between Plaintiff and PILC.  Plaintiff does not allege and there is nothing before the Court suggesting that PNC Bank was a party to the Sandpiper lease, modified lease, or the vendor's lien deed, or that it had any involvement with these contracts.  However, there is no question that the Sandpiper property is at the heart of Plaintiff's claims against all of the Defendants, and that resolution of the claims will necessarily involve a common issue, namely the determination of Plaintiff's rights and obligations with respect to the Sandpiper property.  Thus, under the circumstances, the joinder of PNC Bank and the non-diverse Defendants appears to be permissible under Rule 20.

Even if the joinder of these Defendants was not

> out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.  A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded.

15

permissible, PNC Bank has not carried its burden of establishing that the joinder of the non-diverse Defendants was egregious. The fact that the non-diverse Defendants are alleged to have breached their contracts with Plaintiff in 2011, which is a year before PNC Bank's alleged breach, does not establish that their joinder was egregious particularly where Plaintiff has alleged that the actions of all of the Defendants have damaged his rights with respect to the Sandpiper property.  "To find fraudulent joinder, the joinder must be shown to be more than impermissible; it must be egregiously or obviously so." Hearn, 2014 U.S. Dist. LEXIS 36495, *8. Because PNC Bank has not carried its burden of establishing fraudulent misjoinder, the Court is not authorized to ignore the citizenship of non-diverse Defendants PICL and Bridges.  The presence of these non-diverse Defendants means that complete diversity is lacking, and deprives this Court of federal subject matter jurisdiction. Accordingly, Plaintiff's Motion to Remand is due to be granted.

### III. Conclusion

For the reasons discussed herein, the undersigned **RECOMMENDS** that Plaintiff's Motion to Remand (Doc. 14) be **GRANTED**, and that this action be **REMANDED** to the Circuit Court of Baldwin County, Alabama.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on

16

all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **30th** day of **December, 2014.**

                                                <u>/s/ SONJA F. BIVINS</u>
                                                **UNITED STATES MAGISTRATE JUDGE**